UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Alberto Morina<br>36 Wooddale Road<br>Philadelphia, PA  19118 | :<br>:<br>:<br>: |
| Plaintiff | :<br>: |
| vs. | :<br>: |
| Neiman Marcus Group, Inc.<br>1201 Elm Street<br>Dallas, Texas   75270 | :<br>:<br>:<br>: |
| Defendant | : |

# COMPLAINT

## I. PRELIMINARY STATEMENT:

1. This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Alberto Morina ("Morina"), a former employee of Defendant, Neiman-Marcus Group, who has been harmed by the Defendant's discriminatory employment practices.

2. This action arises under the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. §621, *et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et seq*.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff's claims are substantively based on the ADEA.

-1-

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff Morina's claims arising under the PHRA.

5. All conditions precedent to the institution of this suit have been fulfilled, such as exhausting Administrative remedies and obtaining "Notice of suit Rights" letter from the US Equal Employment Opportunity Commission ("EEOC"). Plaintiff Morina has satisfied all jurisdictional prerequisites to the maintenance of this action.

### III. PARTIES

6. The Plaintiff herein is:

   Alberto Morina
   36 Wooddale Road
   Philadelphia, PA  19118

7. The Defendant herein is:

   Neiman Marcus Group, Inc
   1201 Elm Street
   Dallas, Texas   75270

It is further averred Plaintiff worked at Defendant's store located at 160 N. Gulph Road, King of Prussia, PA  19406.

### IV. ADDITIONAL UNDERLYING FACTS

8. The Defendant, on information and belief, employed four or more persons when the unlawful conduct alleged in this Complaint occurred.

9. Plaintiff had been employed by Defendant since July 23, 2001.

10. Plaintiff was employed by Defendant as a Fitter/Tailor. Plaintiff is 71 years old.

11. At all times relevant hereto, the Defendant was acting through its agents, servants and employees, who were acting within the scope of their authority, course of their employment and under the direct control of the Defendant.

12. At all times material herein, the Defendant is and has been a "person" and "employer" as defined under the ADA and the PHRA, and is accordingly subject to the provisions of each said Acts.

## V.  STATEMENT OF CLAIMS

13. Paragraphs 1 – 12 are incorporated herein by reference as if set forth at length.

14. Plaintiff opposed a practice made unlawful by both the ADEA and the Pennsylvania Human Relations Act in the following manner:

    a. Around the middle of June or late June 2012, Plaintiff informed Management, including Human Resources Director Michael Piros and General Manager Melissa Dietz - in an Alterations Department meeting, that the charges for alterations on his tickets for alterations for suits were being deleted by salesmen.  This deletion of Plaintiff's tailoring charges from his tickets was against Defendant's Policies and Rules and financially penalized Plaintiff. Plaintiff avers such a violation of Defendant's Policies and Rules should have resulted in discipline against the salesmen deleting his tailoring charges on the ticket, who were substantially younger than Plaintiff (age 71).  The practice of deleting the tailoring charges on Plaintiff's tickets was allowed to occur by his Manager, Kinh Huynh, who Plaintiff avers became determined to fire him at the first opportunity.  Approximately a month to a month and a half later, Plaintiff's former manager struck back at Plaintiff and used the pretext set forth below to terminate him.

    b. As set forth above, Plaintiff worked for Neiman Marcus as a Fitter/Tailor.  Plaintiff was responsible for customer alterations.  When a salesperson sells Neiman Marcus clothes and the customer needs alterations, Plaintiff would be called to come to the floor and take customer's measurements.  As part of that process, the salesperson would hand

Plaintiff two work tickets.  The incident in question started with a phone call from Steve Shuster, the salesperson who requested Plaintiff on the floor to measure a "customer."  When Plaintiff arrived, Plaintiff asked the salesperson for the work tickets.  At that point, the salesperson while walking said "no ticket."  In further explanation, the salesman was informing Plaintiff that there was no work ticket related to the requested measurement.

        c.      Not wanting the "customer" to wait, Plaintiff looked at the sleeves for the jacket – one longer than other by inch and gave the customer an opinion, not a price (regarding the jacket).

        d.      Plaintiff went back to his work space.

        e.      The next day, Plaintiff saw the salesperson who called Plaintiff to come down in a side room off the floor.  Plaintiff said to the salesperson that his customer "declined work on the jacket."  The salesperson then told Plaintiff that the customer was <u>not</u> a customer, it was his friend and the jacket was <u>not</u> a Neiman Marcus jacket, it was bought in Italy.

        f.      Plaintiff confronted the salesperson as friends, "what the fuck, you know I'm not allowed to work on non Neiman Marcus stuff."

        g.      Two weeks later, as Plaintiff finished his shift, Plaintiff was asked to stop by the Supervisor's office, at which time Plaintiff was told he was being let go for cursing.

        h.      Plaintiff had no prior warnings nor was he ever written up for anything, related to the cursing incident (prior to his termination).  Prior to this incident, Plaintiff had never received any discipline or warnings of any type.

        15.      Plaintiff believes Defendant's actions were retaliatory because Plaintiff has been employed by Defendant for 11 years and he had no disciplinary actions.  Plaintiff was

told he was terminated for using a curse word in the backroom area used by the tailors.  It is further averred that the backroom workers, similarly situated to Plaintiff, regularly use curse words and certain backroom workers, including Plaintiff's Supervisor, Kinh Huynh, actually discussed and joked about their sex lives.  No discipline has ever been imposed for such conversations, although such sexually laced discussions by Kinh Huynh and other backroom workers would violate Defendant's policies.

16. Based upon the foregoing, Plaintiff avers that Defendant violated both the ADEA and Section 5(d) of the Pennsylvania Human Relations Act 43 P.S.  951-963.

## COUNT I
## DISCHARGE – AGE – DISCRIMINATION
## ALBERTO MORINA vs. NEIMAN-MARCUS GROUP

17. Plaintiff incorporates paragraphs 1 through 16 as if set forth at length.

18. Plaintiff avers his protected class is age as he is 71 years old.

19. On August 1, 2012 Plaintiff was discharged.

20. The Defendant's reason for discharge was use of a curse word in a backroom utilized by Neiman Marcus employees.

21. Plaintiff avers Defendant's backroom workers in the tailoring areas from time to time use curse words in conversation with each other – in the back room location.

22. Plaintiff was replaced by two tailors, both in their thirties.

23. Plaintiff believes Defendant's actions were due to Plaintiff's age.

## COUNT II
## PHRA – VIOLATION OF SECTION 5(d) OF PHRA 43 P.S. 951-963
## ALBERTO MORNIA vs. NEIMAN-MARCUS GROUP

24. Plaintiff incorporates paragraphs 1 through 23 as if set forth at length.

00045779

25. The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Morina to discrimination by terminating the Plaintiff's employment based his age, constituted a violation of the PHRA.

26. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Morina sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

27. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Morina suffered severe emotional distress, embarrassment, humiliation and loss of self-esteem.

## **PRAYER FOR RELIEF**

28. Plaintiff incorporates paragraphs 1 through 27 as if set forth at length.

**WHEREFORE,** Plaintiff Morina requests that this Court enter judgment in his favor and against the Defendant, and order that:

a. Defendant compensate Plaintiff Morina with back pay, at a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination;

b. Defendant compensate Plaintiff Morina with an award of front pay, if appropriate;

c. Defendant pay to Plaintiff Morina punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

00045779

-7-

       d.       Defendant pay to Plaintiff Morina pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

       e.       Defendant shall eliminate all unlawful discriminatory practices as well as remedy the discriminatory effect of past practices and procedures;

       f.       The Court shall award such other relief as if deemed just and proper, in law and/or equity, including injunctive relief if the Honorable Court deems said relief appropriate.

### JURY DEMAND

Plaintiff Morina demands trial by jury.

Respectfully submitted,

HARVEY, PENNINGTON LTD.

BY:_____
    FREDICK M. WALTON, JR., ESQUIRE
    Attorney for Plaintiff
    Alberto Morina